# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

DAVID ANGEL SIFUENTES III,
Plaintiff,

V.

Case No. 3:25-cv-04479-AGT

Hon. Alex G. Tse
United States Magistrate Judge

META PLATFORMS, INC. (f/k/a Facebook, Inc.),
Defendant.

_____/

## AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
## DEMAND FOR JURY TRIAL

Plaintiff David Angel Sifuentes III ("Plaintiff"), In Pro Se, brings this action against Defendant
Meta Platforms, Inc. ("Meta" or "Facebook") and alleges as follows:

**INTRODUCTION**

This action arises from a massive data breach that Defendant Facebook, now known as Meta
Platforms, Inc., allowed to occur, and its subsequent failure to timely and adequately notify
Plaintiff of this breach. The breach, which Plaintiff alleges occurred on or around January 19,
2021, resulted in the compromise of Plaintiff's sensitive personal information and that of his
family, friends, and other Facebook users. Despite the requirements under federal law, including
the Fair Credit Reporting Act (FCRA) and its implementing regulations by the Federal Trade
Commission (FTC), as well as state law, Defendant failed to provide Plaintiff with any
notification of this breach until Plaintiff independently discovered it through an iPad notification
on or about May 20, 2025.

As a direct and proximate result of Defendant's wrongful conduct, Plaintiff's Facebook account
was hijacked, his personal information and that of his contacts were exposed, unauthorized

1

communications were sent from his account, and he has suffered significant concrete injuries, including but not limited to, invasion of privacy, emotional distress, and the denial of remedial services such as credit monitoring that should have been offered. Defendant's actions and omissions constitute violations of federal and state law, including the FCRA, negligence, breach of contract, various consumer protection statutes, the Computer Fraud and Abuse Act, Identity Theft statutes, common law fraud, trespass to chattels, and the denial of procedural due process protections concerning his data.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) as this action involves violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq., and federal constitutional claims.

5. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity jurisdiction) as the Plaintiff is a citizen of Michigan, and Defendant Meta Platforms, Inc. is a Delaware corporation with its principal place of business in California, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as these claims are so related to the federal claims that they form part of the same case or controversy.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendant Meta Platforms, Inc. maintains its principal place of business and corporate headquarters at 1 Hacker Way, Menlo Park, CA 94025, within this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District, as Defendant's data security and notification policies and practices emanate from its headquarters.

## PARTIES

2

8. Plaintiff David Angel Sifuentes III is an individual residing at 439 More St. NE, Unit 2, Grand Rapids, Michigan 49503. His telephone number is 616-283-5215, and his email address is davidsifuentes61@yahoo.com. Plaintiff has been a user of Defendant's Facebook platform since approximately 2011. The email addresses associated with his Facebook account include davidsifuetes61@yahoo.com and dave9074@gmail.com.

9. Defendant Meta Platforms, Inc. (f/k/a Facebook, Inc.) is a Delaware corporation with its principal place of business located at 1 Hacker Way, Menlo Park, California 94025. Defendant owns and operates the Facebook social media platform and is engaged in the business of collecting, storing, and utilizing the personal data of its users, including Plaintiff.

## FACTUAL ALLEGATIONS

10. Plaintiff has been a registered user of Defendant's Facebook platform since approximately 2011, entrusting Defendant with significant amounts of personal data, including but not limited to his name, email addresses (davidsifuetes61@yahoo.com and dave9074@gmail.com), location information, personal contacts (family and friends, including minor children), communications, and other private information, including his password.

11. Upon information and belief, on or around January 19, 2021, Defendant Facebook suffered a massive data breach (the "Data Breach") which compromised the personal information of millions of its users, including Plaintiff. A summary of this breach is provided as Exhibit B (Facebook Data Breach: What Happened and How to Prevent It.pdf).

12. Despite the occurrence of this Data Breach and the compromise of Plaintiff's sensitive personal information, Defendant failed to provide Plaintiff with any direct, timely, or adequate notification that his data had been breached.

13. On or about May 20, 2025, Plaintiff received a notification on his iPad which alerted him for the first time that his Facebook account information had been involved in a data breach dating back to January 19, 2021. See Exhibit A (Screenshot of Security Recommendation

from facebook.com, last modified 1/9/21, showing compromised/reused password).

14. Prior to this May 20, 2025 notification, Plaintiff had no knowledge that his personal information held by Facebook had been compromised in the Data Breach.

15. As a result of the Data Breach and Defendant's failure to secure his data and notify him, Plaintiff's Facebook account was hijacked. Unauthorized persons gained access to his account, personal information, details about his family and friends (including their profiles and information about minor children linked to his account), his locations, and places he frequents. This unauthorized access was facilitated by the compromise of Plaintiff's password, which was stored on Defendant's servers.

16. Since approximately 2021, Plaintiff has experienced unauthorized activity on his Facebook account, including messages being sent and Facebook friend requests being made that he did not authorize. This activity caused him significant distress and concern about the security of his personal information and the safety of his contacts.

17. The ongoing nature of the harm is further evidenced by attempts at phishing and other malicious activities, such as the fraudulent email disguised as an antivirus company received by Plaintiff on June 2, 2025, attached hereto as Exhibit C (Screenshot of "Verify Your Email" from Cyber/security@uhuvijiqip.mail.eparev.rivettheme.com). This ongoing injury is fairly traceable to the Facebook data breach because Plaintiff's compromised personal information, including his IP address and other protected data, has been used by bad actors in a "constant virus spreading to other accounts." Plaintiff, having previously used the same password across multiple accounts due to Defendant's failure to notify him of the breach, has since changed these passwords upon notification from other sources, unlike the delay in notification from Facebook.

18. Defendant, despite being aware or constructively aware of the Data Breach and its impact on users like Plaintiff, failed to offer Plaintiff any remedial services, such as identity theft monitoring or credit monitoring, which are standard industry responses and often required or recommended by regulatory bodies like the FTC following a data breach.

19. Defendant had a duty to its users, including Plaintiff, to implement and maintain reasonable data security practices to protect their personal information from unauthorized

access and disclosure.

20. Defendant also had a duty, arising from statute, common law, and its own terms of service, to timely and adequately notify users of data breaches that compromise their personal information.

21. Defendant's failure to adequately secure Plaintiff's data and its failure to provide timely and adequate notification of the Data Breach has caused Plaintiff to suffer concrete injuries, including but not limited to:

a. Actual harm from the hijacking of his account and unauthorized use of his personal information;

b. Ongoing risk of identity theft and fraud due to the exposure of his sensitive data;

c. Invasion of his privacy and the privacy of his family and friends, including minor children whose information was accessible through his compromised account;

d. Significant emotional distress, anxiety, and fear regarding the exposure of his personal information and the security of his online presence and contacts;

e. Loss of time and effort spent attempting to secure his account and mitigate the harm caused by the breach; and

f. Deprivation of the opportunity to take earlier steps to protect himself and his information had he been timely notified.

22. Plaintiff is informed and believes that Defendant's conduct, including its failure to report the breach to all consumers and offer remedial services, violates protocols established by the Federal Trade Commission (FTC) and provisions of the Fair Credit Reporting Act.

23. Plaintiff is further informed and believes that Defendant, by virtue of its extensive collection and use of consumer data, its engagement in social networking and communication with law enforcement agencies, and its current activities allowing payments and collecting financial information (thereby acting like a bank and potentially subject to state and federal banking laws and FDIC protections), is subject to certain consumer protection laws, including aspects of the Fair Credit Reporting Act related to data security and reporting, and analogous obligations concerning the safeguarding of sensitive consumer information.

24. The number of data breaches Plaintiff has been involved in or the number of complaints he
    has filed is irrelevant to the merits of this specific breach. The focus remains on
    Defendant's conduct related to this breach and its impact on Plaintiff. See *In re
    Zappos.com, Inc., Customer Data Security Breach Litigation*, 818 F. Supp. 2d 219 (D.
    Nev. 2011).

## REQUEST FOR JUDICIAL NOTICE

25. Pursuant to Federal Rule of Evidence 201, Plaintiff respectfully requests that this Court
    take judicial notice of the following exhibits, attached hereto and incorporated by
    reference:
    a. Exhibit A: Screenshot of Security Recommendation from facebook.com, last modified
    1/9/21, showing a compromised, reused password. This demonstrates the direct
    notification Plaintiff received on his iPad regarding the Facebook data breach.
    b. Exhibit B: "Facebook Data Breach: What Happened and How to Prevent It.pdf" from
    strongdm.com, providing an overview of the 2021 Facebook data leak affecting 533
    million users. This document contextualizes the breach and confirms its widespread
    nature.
    c. Exhibit C: Screenshot of fraudulent email disguised as an antivirus company, dated June
    2, 2025, from Cyber/security@uhuvijiqip.mail.eparev.rivettheme.com. This exhibit
    provides evidence of ongoing harm and phishing attempts directly traceable to the
    compromise of Plaintiff's data.

## STATUTE OF LIMITATIONS AND EQUITABLE TOLLING

26. Plaintiff asserts that any applicable statutes of limitations for the claims herein have been
    tolled due to the doctrine of equitable tolling, including but not limited to the discovery
    rule and fraudulent concealment.

27. Plaintiff had no knowledge of the Data Breach or that his specific information was

compromised therein until on or about May 20, 2025. Defendant did not provide Plaintiff with any notice of the breach prior to this date, thereby preventing Plaintiff from discovering his injury and the cause thereof.

28. Plaintiff alleges that Defendant knew or should have known of the Data Breach in or around January 2021 and had a duty to notify affected users, including Plaintiff. Defendant's failure to notify Plaintiff actively concealed the facts giving rise to Plaintiff's claims. Plaintiff acted with reasonable diligence upon discovering the breach.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
## (Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.)

29. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

30. Defendant Meta, by collecting and maintaining vast amounts of personal and sensitive user data, which can be used to determine eligibility for credit, insurance, employment, or other purposes enumerated in the Fair Credit Reporting Act (FCRA), and by suffering a data breach of such information, may be subject to certain FCRA requirements or analogous federal duties concerning data security and consumer notification.

31. The FTC, which enforces FCRA, has established protocols and issued guidance requiring companies that suffer data breaches to provide timely notification to affected consumers and, where appropriate, offer remedial services like credit monitoring.

32. Defendant willfully and/or negligently failed to comply with its obligations by:

a. Failing to implement and maintain reasonable security procedures to protect Plaintiff's sensitive information from unauthorized access and disclosure.

b. Failing to provide Plaintiff with timely and adequate notice of the Data Breach.

c. Failing to offer Plaintiff any remedial services, such as credit monitoring, despite the serious nature of the breach and the types of information compromised.

33. As a direct and proximate result of Defendant's violations of the FCRA and/or federally mandated protocols, Plaintiff has suffered actual damages, including but not limited to the compromise of his personal information, emotional distress, an increased and ongoing risk of identity theft, and the loss of privacy, as well as statutory damages where applicable.

34. Defendant's conduct was willful, warranting an award of punitive damages.

**SECOND CAUSE OF ACTION**
**(Negligence)**

35. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

36. Defendant owed a duty of reasonable care to Plaintiff and its other users to safeguard their personal information, which it collected and stored as part of its social media platform services. This duty included implementing adequate data security measures and providing timely notification of any breaches.

37. Defendant breached its duty of care by, inter alia:

a. Failing to establish and implement appropriate and reasonable security measures to protect Plaintiff's personal information from foreseeable threats and unauthorized access.

b. Failing to adequately monitor its systems for security vulnerabilities and breaches.

c. Failing to timely detect the Data Breach.

d. Failing to provide Plaintiff with timely, accurate, and adequate notice of the Data Breach.

e. Failing to offer Plaintiff credit monitoring or other remedial services.

38. As a direct and proximate result of Defendant's negligence and neglect, Plaintiff suffered damages as described herein, including the compromise of his personal data, unauthorized access to and use of his account, invasion of privacy, emotional distress, and an ongoing risk of future harm.

**THIRD CAUSE OF ACTION**
**(Invasion of Privacy - Intrusion Upon Seclusion and Public Disclosure of Private Facts)**

39. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

40. Plaintiff had a reasonable expectation of privacy in the personal information he entrusted to Facebook, including his communications, contact lists, location data, and other non-public information.

41. Defendant, through its grossly inadequate security practices, allowed third parties to intrude upon Plaintiff's seclusion by accessing his private Facebook account and the

sensitive data contained therein. This intrusion is offensive and objectionable to a a reasonable person.

42. Furthermore, upon information and belief, the hijacking of Plaintiff's account and compromise of his data led to the unauthorized disclosure or exposure of Plaintiff's private information and that of his family and friends to unauthorized third parties, which is not of legitimate public concern.

43. As a direct and proximate result of Defendant's conduct leading to this invasion of Plaintiff's privacy, Plaintiff has suffered emotional distress and other damages as alleged herein.

**FOURTH CAUSE OF ACTION**
**(Breach of Express Contract)**

44. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

45. At the time Plaintiff subscribed to Defendant's Facebook services, and throughout his continuous use of said services, including at the time of the 2021 Data Breach and up to the present, a valid and binding contract (the "Terms of Service" and "Privacy Policy") existed between Plaintiff and Defendant. Plaintiff continues to be a party to such an agreement by his ongoing use of Facebook.

46. The Terms of Service and Privacy Policy contained express and/or implied terms obligating Defendant to provide services in a competent manner and to take reasonable measures to protect the security, confidentiality, and integrity of Plaintiff's Personal Information, including his account password, collected and stored in connection with the provision of those services. These obligations are also evidenced by Defendant's public representations regarding privacy and data security, which form part of the basis of the bargain.

47. Defendant breached its contractual obligations under the Terms of Service and Privacy Policy by, inter alia: a. Failing to implement and maintain reasonable and adequate security measures to protect Plaintiff's Personal Information from unauthorized access and theft; b. Specifically failing to protect Plaintiff's account password, thereby enabling unauthorized access to his Facebook account and the sensitive data therein; c. Failing to

comply with its own privacy policies and other contractual representations concerning data security and consumer data protection; d. Allowing the 2021 Data Breach to occur as a result of these failures; and e. Failing to provide Plaintiff with timely, truthful, and adequate notification of the Data Breach, which itself constitutes a breach of duties of good faith and fair dealing, if not an explicit contractual notification requirement.

48. Plaintiff has performed all, or substantially all, of his obligations under the contract, including by using Defendant's services, or any non-performance is excused by Defendant's material breaches.

49. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered damages, including the loss of the benefit of the bargain (a secure platform for his data), the compromise of his personal information, and consequential damages as described herein.

## FIFTH CAUSE OF ACTION
## (Breach of Implied Contract)

50. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

51. By soliciting, collecting, and storing Plaintiff's sensitive Personal Information (including his name, email addresses, location, contacts, and account password) as a necessary condition for providing its Facebook services, and by profiting from such services, Defendant entered into an implied contract with Plaintiff.

52. A material term of this implied contract, inherent in the nature of the services provided and the sensitivity of the data entrusted, was that Defendant would employ reasonable and appropriate measures, consistent with industry standards and its own representations, to safeguard Plaintiff's Personal Information and protect it from unauthorized access, disclosure, use, and theft.

53. Defendant breached this implied contract by, inter alia: a. Failing to implement and maintain adequate, industry-standard data security systems, protocols, and practices; b. Failing to adequately protect Plaintiff's Personal Information, including his account password, from unauthorized access and exfiltration; c. Allowing the 2021 Data Breach to

occur due to its deficient security; and d. Failing to provide timely and adequate notice of the breach to Plaintiff.

54. Plaintiff fulfilled his obligations under the implied contract, including by using Defendant's services.

55. As a direct and proximate result of Defendant's breach of the implied contract, Plaintiff has suffered damages, including but not limited to: the compromise of his Personal Information; costs incurred for credit monitoring, identity theft protection, and other mitigation efforts; the value of his time spent addressing the consequences of the breach; emotional distress; a diminished value of the services received; and an ongoing, increased risk of future harm.

**SIXTH CAUSE OF ACTION**
**(Violation of California Unfair Competition Law - Cal. Bus. & Prof. Code § 17200 et seq.)**

56. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

57. Defendant's conduct, including its failure to implement reasonable data security, its failure to timely notify users of the Data Breach, and its misrepresentations or omissions regarding the security of its platform, constitutes unlawful, unfair, and fraudulent business acts or practices within the meaning of California's Unfair Competition Law (UCL).

58. Defendant's unlawful conduct includes violations of other statutes cited herein, including potentially the FCRA.

59. Defendant's unfair conduct includes its failure to protect sensitive user data despite profiting from such data, and its failure to adequately inform users of breaches, thereby depriving them of the ability to take self-protective measures. This conduct offends established public policy and is immoral, unethical, oppressive, and unscrupulous.

60. Defendant's fraudulent conduct includes misrepresenting, by omission, the security of its platform and failing to disclose the material fact of the Data Breach to Plaintiff in a timely manner.

61. As a result of these UCL violations, Plaintiff has suffered injury in fact and lost money or property, including the loss of value of his personal information and the time and resources spent addressing the consequences of the breach. Plaintiff seeks restitution and injunctive

relief.

## SEVENTH CAUSE OF ACTION
### (Violation of California Consumers Legal Remedies Act - Cal. Civ. Code § 1750 et seq.)

62. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

63. Plaintiff is a "consumer" and Defendant provides "services" within the meaning of the Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1761.

64. Defendant violated the CLRA by engaging in unfair or deceptive acts or practices, including but not limited to:

a. Representing that its services had characteristics or benefits (i.e., data security) which they did not have (Cal. Civ. Code § 1770(a)(5)).

b. Representing that its services were of a particular standard, quality, or grade when they were of another (Cal. Civ. Code § 1770(a)(7)).

c. Advertising goods or services with intent not to supply them as advertised (by failing to provide adequate security) (Cal. Civ. Code § 1770(a)(9)).

d. Failing to disclose material information about the security of its platform and the breach of Plaintiff's data.

65. Plaintiffs complaint also should serve as a notice of Defendant's violations of the CLRA as required by California Civil Code § 1782(a).

66. As a result of Defendant's violations of the CLRA, Plaintiff has suffered damages as alleged herein and is entitled to actual damages, punitive damages, injunctive relief, and any other relief the Court deems proper.

## EIGHTH CAUSE OF ACTION
### (Intentional Infliction of Emotional Distress)

67. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

68. Defendant's conduct, in failing to secure highly personal and sensitive data, failing to detect a breach for an extended period or failing to acknowledge it, and then failing to notify affected users like Plaintiff for several years, all while knowing the significant distress such a breach and lack of notification would cause, constitutes extreme and

outrageous conduct.

69. Defendant knew or acted with reckless disregard of the probability that Plaintiff would suffer severe emotional distress as a result of its conduct, given the sensitive nature of the data compromised and the implications of account hijacking and identity exposure.

70. As a direct and proximate result of Defendant's extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including anxiety, fear, and anguish.

**NINTH CAUSE OF ACTION**
**(Violation of Michigan Consumer Protection Act, MCL 445.901 et seq.)**

71. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

72. Plaintiff is a consumer residing in Michigan, and Defendant engaged in trade or commerce affecting the people of Michigan.

73. Defendant violated the Michigan Consumer Protection Act (MCPA) by engaging in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, including but not limited to:

a. Causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services (MCL 445.903(1)(b)).

b. Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have (MCL 445.903(1)(c)) by implicitly or explicitly promising data security it did not provide.

c. Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer (MCL 445.903(1)(s)) – specifically, the Data Breach and compromise of Plaintiff's information.

d. Gross discrepancies between the oral or written representation of material fact and the actual fact thereof (MCL 445.903(1)(y)).

74. As a direct and proximate result of Defendant's violations of the MCPA, Plaintiff has suffered loss and damages as described herein.

**TENTH CAUSE OF ACTION**
**(Bailment)**

75. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

76. Plaintiff delivered his personal data (the "bailed property") to Defendant for the specific purpose of Defendant providing social networking services and safekeeping said data.

77. Defendant accepted Plaintiff's personal data, thereby creating a bailment relationship wherein Defendant (bailee) owed a duty of care to protect Plaintiff's (bailor's) data.

78. Defendant breached its duty of care as bailee by failing to implement adequate security measures, resulting in the Data Breach and compromise of Plaintiff's bailed property.

79. As a direct and proximate result of Defendant's breach of its duties as bailee, Plaintiff has suffered damages, including the loss of his personal data and the consequences flowing therefrom.

## ELEVENTH CAUSE OF ACTION
**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 et seq.)**

80. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

81. Plaintiff's Facebook account, including his password and stored personal data on Meta's servers, constitutes a "protected computer" as defined by 18 U.S.C. § 1030(e)(2)(B).

82. Defendant Meta, by failing to adequately secure its systems and by allowing unauthorized access to Plaintiff's account and data, has contributed to, or enabled, unauthorized access to a protected computer. This includes, but is not limited to, the unauthorized access to Plaintiff's password which was stored on Meta's servers.

83. The unauthorized access to Plaintiff's account and personal information, including his password, resulted in "damage" (impairment to the integrity or availability of data, a program, a system, or information) and "loss" (any reasonable cost to any victim, including the cost of responding to an offense, assessing damage, restoring data, and any revenue lost) as defined by 18 U.S.C. § 1030(e)(8) and (11), respectively.

84. Plaintiff's aggregate "loss" resulting from this unauthorized computer access and conduct fairly traceable to it meets, and upon discovery will be proven to further exceed, the $5,000 statutory threshold for civil actions under 18 U.S.C. § 1030(c)(4)(A)(i)(I). This loss encompasses, without limitation, the economic value of Plaintiff's considerable time and

resources spent assessing the nature and extent of the unauthorized access to his account and data; costs associated with investigating the breach's impact and restoring account integrity; costs for necessary credit monitoring and identity theft protection services directly necessitated by the computer intrusion; and any reasonably anticipated future out-of-pocket expenses directly stemming from this unauthorized computer access and its ongoing consequences, including the purchase of antivirus software for his devices. The "loss" under the CFAA is broad and can include investigatory and remediation costs. See, e.g., *WEC Carolina Energy Solutions LLC v. Miller*, 687 F.3d 395 (4th Cir. 2012); *A.V. ex rel. F.V. v. iParadigms, LLC*, 544 F. Supp. 2d 473 (E.D. Va. 2008).

85. As a direct and proximate result of this violation of the CFAA, Plaintiff is entitled to compensatory damages and appropriate equitable relief pursuant to 18 U.S.C. § 1030(g).

## TWELFTH CAUSE OF ACTION
### (Identity Theft - Federal and State)

86. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

87. Defendant's failure to secure Plaintiff's Personal Information, including his sensitive data and critically his account password (which is expressly defined as "personal identifying information" under Michigan law, M.C.L. § 445.63(n)), and the subsequent unauthorized access to his Facebook account, constitutes, facilitates, or has directly led to the means for committing identity theft against Plaintiff, in violation of federal law (e.g., Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028) and/or Michigan Identity Theft Protection Act, M.C.L. § 445.61 et seq.

88. As a direct and proximate result of Defendant's conduct, Plaintiff's identity has been stolen or is at significant and imminent risk of being stolen and used for fraudulent purposes, causing him substantial damage, ongoing distress, and financial harm, as evidenced by ongoing phishing attempts (Exhibit C) and the need to repeatedly change passwords.

## THIRTEENTH CAUSE OF ACTION
### (Fraud - Common Law)

89. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

90. Defendant made material representations to Plaintiff, both implicitly by offering its services requiring the submission of sensitive PII, and explicitly in its privacy policies, terms of service, and marketing materials (upon information and belief available through discovery), that it would take reasonable and adequate measures to secure Plaintiff's Personal Information, including his account password, and protect it from unauthorized access and theft.

91. These representations were false, as demonstrated by Defendant's inadequate security practices that led to the massive 2021 Data Breach and the compromise of Plaintiff's Personal Information.

92. Alternatively, and additionally, Defendant engaged in fraudulent omission and concealment by possessing knowledge of the Data Breach (or by acting in reckless disregard of its occurrence and impact) and thereafter intentionally and knowingly failing to disclose the material facts of the breach and its specific impact on Plaintiff's Personal Information (including his password) for several years. This concealment was designed to mislead Plaintiff and other customers, induce them to continue using and paying for Defendant's services, and prevent Plaintiff from taking timely action to protect himself from the consequences of the breach, including the ongoing risk of financial account hijacking via fraudulent emails (Exhibit C).

93. Defendant knew its representations about its security practices were false when made, or, at a minimum, made them with reckless disregard for their truth or falsity. Regarding the fraudulent concealment, Defendant knew of the Data Breach and its duty to disclose, yet intentionally suppressed this information.

94. Defendant made such misrepresentations or engaged in such concealment with the intention that Plaintiff would rely upon them, continue to entrust Defendant with his Personal Information, and continue to subscribe to and pay for Defendant's services.

95. Plaintiff reasonably and justifiably relied on Defendant's representations of security and/or was directly harmed by his inability to act due to Defendant's protracted and deceptive concealment. Plaintiff continued to use Defendant's services and believed his Personal Information was secure, or at least that Defendant would inform him if it was not.

96. As a direct and proximate result of Defendant's fraud, Plaintiff has suffered significant damages, including but not limited to: the compromise of his Personal Information; unauthorized access to his accounts; costs associated with mitigating current and future identity theft; financial losses; severe emotional distress; and the loss of the benefit of the bargain for services that were not as secure as represented.

## FOURTEENTH CAUSE OF ACTION
### (Trespass to Chattels - Common Law)

97. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

98. Plaintiff has a legally protected possessory interest in his Personal Information, including his account password and the data stored within or accessible via his Facebook account. This electronic data and the integrity and secure accessibility of his account constitute chattels.

99. Defendant's actions or culpable omissions (including its gross negligence or recklessness in failing to secure its computer systems and Plaintiff's data) intentionally facilitated or directly resulted in unauthorized third parties intermeddling with, accessing, exfiltrating, and potentially altering Plaintiff's Personal Information and his Facebook account. This unauthorized access, data theft, and compromise of his account password impaired the condition, quality, utility, and value of Plaintiff's Personal Information and the security and integrity of his Facebook account.

100.    This interference was without Plaintiff's consent or authorization and constituted a trespass to his chattels.

101.    As a direct and proximate result of this trespass, facilitated by Defendant's misconduct, Plaintiff has suffered damages, including the loss of control and exclusivity over his Personal Information, the cost of remedying the interference (such as securing accounts and data, and purchasing antivirus software), the diminished value and security of his data and account, and associated emotional distress.

## FIFTEENTH CAUSE OF ACTION
### (Violation of Procedural Due Process - U.S. Constitution, Fifth and Fourteenth Amendments)

17

102.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

103.    Plaintiff's personal data stored on Defendant's platform, including his communications, contacts, location information, and financial information (as Meta allows payments and collects financial data, thereby acting akin to a bank and potentially subject to state and federal banking laws and FDIC protections), constitutes a property interest subject to the protections of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution. This includes his password, which is a protected asset under the Computer Fraud and Abuse Act and stored at Meta's servers.

104.    While Defendant is not a government entity, it is subject to state and federal laws. Its extensive engagement in social networking and communication with law enforcement agencies, coupled with its evolving role in facilitating financial transactions akin to banking, imbues it with quasi-governmental functions and responsibilities concerning the safeguarding of user data. As such, Defendant has a duty to provide due process to its users regarding their data. See, e.g., *Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) (state action doctrine); *Marsh v. Alabama*, 326 U.S. 501 (1946) (public function doctrine).

105.    Defendant's failure to timely and adequately notify Plaintiff of the Data Breach deprived Plaintiff of a meaningful opportunity to be heard or to take protective measures concerning his property interest in his data, thereby violating his procedural due process rights.

106.    Defendant's actions and omissions denied Plaintiff appropriate notice and an opportunity to be heard regarding the security and compromise of his data, and the availability of remedial services, which are fundamental aspects of due process. Due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319 (1976). Defendant's protracted concealment of the breach constitutes a denial of this fundamental right.

107.    As a direct and proximate result of Defendant's violation of Plaintiff's procedural due process rights, Plaintiff has suffered damages as alleged herein, including the ongoing harm from the exposed data and the inability to mitigate that harm effectively.

**DAMAGES**

108.    As a direct, proximate, and foreseeable result of Defendant's unlawful acts and
omissions set forth above, Plaintiff has suffered, and will continue to suffer, significant and
multifaceted damages, including but not limited to: a. Actual and consequential damages,
encompassing the value of his extensive time spent monitoring his financial accounts,
credit reports, and online accounts; addressing instances and risks of unauthorized access
(including unauthorized access to his Facebook account via the compromised password);
implementing preventative measures against identity theft (including the purchase of
antivirus software); actively securing his digital presence; and the inherent diminished
value of his stolen Personal Information. These damages include both current and
reasonably anticipated future out-of-pocket expenses and other cognizable economic
losses. b. The ongoing and future costs of necessary credit monitoring services, identity
theft protection services, and other remedial measures to protect himself from further
harm. c. Ascertainable losses resulting from the unauthorized use of his Personal
Information and accounts, and economic losses cognizable under the CFAA, including
costs of responding to the computer intrusion and unauthorized account access. d.
Damages flowing directly from Defendant's fraud, trespass to chattels, and breaches of
implied and express contracts, including benefit-of-the-bargain losses. e. Significant
emotional distress, including anxiety, fear, frustration, humiliation, and a profound sense
of violation and vulnerability due to the compromise of his most sensitive Personal
Information (including his password and other personal data) and Defendant's utter failure
to protect it or timely notify him of its theft. f. An ongoing, substantial, and increased risk
of future identity theft, financial fraud, and other misuse of his Personal Information,
constituting fairly traceable future damage and concrete injury.

109.    Plaintiff asserts that he is not required to demonstrate itemized out-of-pocket expenses
for every category of actual damages suffered to be awarded just compensation for the
pervasive harm inflicted by a data breach of this magnitude. Such harm includes intangible
injuries like privacy invasion, emotional distress, and the significant, compensable risk of

future harm, all of which are recognized consequences. Settlements and awards in analogous data breach cases, including those pursued by entities like the FTC, often address widespread harm without demanding individualized proof of out-of-pocket loss for every single affected consumer.

110.    To impose a stricter, immediate burden of itemized out-of-pocket proof on a Pro Se plaintiff for all damages, particularly when corporate entities (legally treated as "persons") achieve substantial settlements based on the inherent nature and scope of the breach itself, would be discriminatory and a violation of Plaintiff's due process rights to fair and equal treatment under the law. The requested damages are intended to compensate for all such harms, including those for which precise out-of-pocket receipts may not exist at this stage or may not fully capture the entirety of the injury.

111.    Plaintiff seeks actual and compensatory damages in an amount to be proven at trial, but estimated to be not less than $300,000.00, or, in the alternative, not less than $150,000.00.

112.    In addition to the damages described above, Plaintiff seeks to recover his out-of-pocket expenses incurred as a direct result of Defendant's conduct, including postage and costs for preparing documents (such as paper and ink), time and resources spent investigating the breach, obtaining antivirus software, and constantly changing his account settings and mitigating the harm caused by the breach.

113.    Defendant's conduct, as alleged herein, including its failure to implement adequate security measures despite knowing the risks, its failure to protect critical data like passwords, its intentional, willful, or reckless disregard for Plaintiff's rights by actively concealing the Data Breach for an extended period, and its overall pattern of misconduct, was malicious, oppressive, and demonstrated a conscious disregard for Plaintiff's rights and safety, thereby warranting the imposition of punitive damages to punish Defendant and deter similar conduct by Defendant and others in the future.

114.    Plaintiff is not required to demonstrate specific out-of-pocket expenses to be eligible for punitive damages, which serve a distinct purpose from compensatory damages.

115.    Plaintiff seeks punitive damages in an amount to be proven at trial, but estimated to be not less than $10,000,000.00, or, in the alternative, not less than $300,000.00.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff David Angel Sifuentes III respectfully prays for judgment against Defendant Meta Platforms, Inc. as follows:

A. Awarding actual and compensatory damages in an amount not less than $300,000.00, or in the alternative, not less than $150,000.00, or an amount to be proven at trial;

B. Awarding punitive damages in an amount not less than $10,000,000.00, or in the alternative, not less than $300,000.00, or an amount to be proven at trial and sufficient to punish Defendant and deter future misconduct;

C. Awarding statutory damages where applicable, including under the Fair Credit Reporting Act, the Computer Fraud and Abuse Act, and Identity Theft statutes;

D. Ordering Defendant to provide Plaintiff with comprehensive identity theft protection and credit monitoring services for a period to be determined by the Court;

E. Granting injunctive relief requiring Defendant to:

i. Implement and maintain adequate data security measures to protect user data, subject to court oversight or third-party audit;

ii. Truthfully and accurately disclose its data security practices;

iii. Provide timely and adequate notification to all affected users of any future data breaches;

iv. Implement due process protections for user data, including timely and adequate notice of data breaches and the opportunity for users to mitigate harm;

F. Awarding Plaintiff his out-of-pocket expenses incurred, including postage, paper, ink, time and resources spent investigating the breach, obtaining antivirus software, and constantly changing his account settings and mitigating the harm caused by the breach;

G. Granting pre-judgment and post-judgment interest as allowed by law; and

H. Granting such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

LIBERAL CONSTRUCTION

Plaintiff, who is proceeding pro se at the filing of this complaint, requests that the pleadings be construed liberally.

Dated: June 7, 2025

Respectfully submitted,

_____

David Angel Sifuentes III
Plaintiff Pro Se
439 More St. NE, Unit 2
Grand Rapids, MI 49503
Telephone: 616-283-5215
Email: davidsifuentes61@yahoo.com

**<u>EXHIBIT A</u>**



**EXHIBIT B**

Curious about how StrongDM works? 😴 Learn more here!



Cybersecurity Glossary /

# Facebook Data Breach: What Happened and How to Prevent It

Speak with a StrongDM Expert





Written by
**StrongDM Team**
Zero Trust Privileged Access Management (PAM)
**StrongDM**

6/7/25, 2:06 PM                         Facebook Data Breach: What Happened and How to Prevent It

Last updated on:                                        Reading time:

**March 14, 2025**                                      3 minutes

In April 2021, Facebook experienced a data leak.

Cybercriminals accessed personal information belonging to more than half a million Facebook users and published it on a hacking forum. Although it's often referred to as one of the biggest cyberattacks of 2021, the original breach actually happened in 2019, but it resurfaced two years later, haunting Facebook shareholders and users alike.

## How Big Was the Leak?

In the Facebook data leak, hackers accessed the information of 533 million users from 106 countries, most of whom were Americans. The leak didn't include any financial or health information, but it did include the following:

- Facebook identities

- Full names

- Birth dates

- Locations

- Email addresses

Interestingly, the hackers didn't spare the social media platform's CEO, Mark Zuckerberg. They also accessed and leaked his phone number.

## How Did the Attack Happen?

Although news websites called the Facebook data breach a hack, Meta disputed claims and said that attackers "scraped" the information from its platform. Scraping

means cybercriminals lifted the information from users' profiles using a feature designed to help people find their friends on Facebook.

A cybersecurity expert, Alon Gal, discovered a massive data dump on a hacking forum.

# Impact of the Security Breach

Facebook downplayed the breach, calling it "old news" because the platform had already fixed the issue in 2019. However, analysts were skeptical and said the information was valuable for criminals because users may not have changed some of their details.

They warned that attackers could use the free-to-access phone numbers and email addresses to commit crimes.

Other implications included the following.

## Financial losses: fines

The Ireland Data Protection Commission investigated the Facebook data leak, finding that the platform had failed to comply with Article 25 of the EU's General Data Protection Regulation (GDPR). As a result, Meta paid a fine of approximately $276 million.

## Reputational damage: user data concerns

The Facebook data breach left users wondering whether the platform was committed to protecting their data. Many users felt that the social media platform didn't protect their personal information and became unsure about the safety of their data on social media platforms. Not even a rebrand to Meta helped Facebook fully reclaim its reputation.

## Legal repercussions: class action lawsuits

Investigations into the data leak snowballed into additional legal expenses and fines. Apart from the $276 million fine the Irish Data Protection Commission imposed, there's potential for further class-action lawsuits.

For example, Digital Rights Ireland (DRI) has pursued a "mass action" lawsuit against Facebook on behalf of affected users, which, if successful, could cost Facebook billions of dollars.

## Impact on employees

Following the attack that exposed Facebook users' personal information, an internal investigation revealed that some employees had been accessing accounts on behalf of hackers. After discovering that these employees had accepted bribes to access users' accounts, Meta fired them.

## Impact on customers

The 2021 Facebook breach was an intrusion on users' privacy and security. With their names, phone numbers, locations, birth dates, and, in some cases, email addresses in the public domain, identity theft and privacy violations became a major concern. The leak eroded trust in Facebook and raised questions about the possibility of data exploitation.

### How to check if you were affected by the incident

With a data leak this big, you might be concerned about your information, considering that Facebook didn't notify the affected users. To check whether your personal details are still "personal," visit HaveIBeenPwned. This website lets you check whether your phone number or email address has been compromised in any data breach.

# How Did Facebook Solve It?

In response to the breach, Facebook made changes to its systems. For one, it disabled the ability for unauthorized people to scrape data from the platform. The company didn't disclose how it was doing this, but it indicated that it was strengthening its defenses to avoid similar attacks.

# Lessons Learned and Best Practices

The exposure of data belonging to 533 million people proved the need for organizations to take data protection more seriously. This way, attackers won't catch these companies off-guard when they "scrape" data off their systems or steal the CEO's information.

The legal battles and financial losses demonstrated the costly consequences of not complying with data privacy laws.

Could Facebook have prevented the leak?

Yes. Proper security measures could have prevented hackers from exploiting the flaw in its contact importer feature.

By implementing privileged session management, Facebook could have monitored privileged sessions and observed employees' activities in real time. Conducting regular audits and assessments would have helped the platform identify its vulnerabilities.

# StrongDM's Approach to Preventing Data Breaches

Data breaches are common and can affect any organization, regardless of size. Deny hackers access privileges with StrongDM's Zero Trust Privileged Access Management (PAM):

- **Visibility and control:** PAM lets you monitor access-related activities and the locations.

- **Risk minimization:** You can minimize your risks by changing access controls once irregular user behavior is identified.

- **Improved security:** PAM improves your security by locking unauthorized users out.

Prevent breaches before they happen. Book a demo with StrongDM today and let us help you control access to your infrastructure.

# Facebook Data Breach: Frequently Asked Questions

## What to do if my personal data is breached by Facebook?

Check if your data was exposed using HaveIBeenPwned. If affected, update your passwords, enable two-factor authentication, and be cautious of phishing attempts. Monitor your accounts for suspicious activity.

## How many people are hacked on Facebook?

The **2021 Facebook data breach** affected **533 million users** from 106 countries, exposing names, phone numbers, birth dates, locations, and email addresses.

## How can Facebook misuse your data?

Facebook can expose your data through **poor security measures** or **flaws in its platform**, allowing **scraping** of personal information. It can also **share data with third parties**, leading to privacy concerns, potential identity theft, and targeted advertising misuse.

# Additional Resources

Learn more about recent data breaches:

**EXHIBIT C**

